**DEEP NINES, INC., Appellant**

v.

**McAFEE, INC., Appellee.**

No. 05–07–00334–CV.

Court of Appeals of Texas, Dallas.

Feb. 29, 2008.

Jeffrey Michael Goldfarb, Scott Tyler Williams, Cara Foos Pierce, Bryan P. Stevens, Akins, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, for Appellant.

Harold H. Walker, Jr., Nona B. Walker, Kronsky E. Kennon, Rose Walker, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and MOSELEY.

## OPINION

Opinion by Justice MORRIS.

In a single issue on appeal, Deep Nines, Inc. contends the trial court erred in granting summary judgment in favor of McAfee, Inc. because there are genuine issues of material fact about Deep Nines's alleged breach of contract. After reviewing the record, we conclude the summary judgment was proper and we affirm the trial court's judgment.

### I.

In 2006, McAfee sued Deep Nines for breach of a contract to pay royalties. The suit was resolved through mediation and a settlement agreement. Under the settlement agreement, Deep Nines agreed to pay McAfee $345,000 in seven installments. An initial payment of $75,000 was to be paid within seven business days of the execution of the agreement. Six remaining installments of $45,000 each were due to be paid on the 6th day of each month for the next six months. The settlement agreement specified that:

> All payments shall be made payable to McAfee, Inc. and delivered to the attention of Harold H. Walker, Jr.; 3500 Maple Ave.; Suite 900; Dallas, TX 75219. All payments must be received by Mr. Walker on or before 5:00 p.m. on the date due. If Mr. Walker does not receive each payment on or before the above stated due dates, he shall provide written notice to Deep Nines through Jeffrey Goldfarb, Akin Gump Strauss Hauer & Feld, 1700 Pacific Avenue; Suite 4100; Dallas, TX 75201, via receipted courier, and to Dan Jackson, Deep Nines, Inc. at 14643 Dallas Parkway, Suite 150, Dallas, Texas 75254 of the past due payment. If Deep Nines then fails to deliver the past due payment within three (3) business days after the notice of past due payment, then Deep Nines shall be considered to be in default.

The agreement also specified that its terms were to be kept confidential. The settlement agreement was signed on January 30, 2006.

On February 8, Harold Walker, on behalf of McAfee, sent Deep Nines written notice that he had not received the initial $75,000 payment by 5:00 p.m. that day as required by the settlement agreement. The notice stated that Deep Nines had three business days to cure the default. That same day, an officer of Deep Nines delivered a $75,000 check to McAfee. The check came with instructions to withhold presentment of the check until February 11, the last day of the cure period. McAfee presented the check for payment on February 11 and received payment on February 13.

On March 6, Walker sent Deep Nines written notification that it had failed to timely remit the first $45,000 monthly installment. Walker again informed Deep Nines that it had three business days to cure the default. On the last day of the cure period, Deep Nines delivered a $45,000 uncertified check to McAfee. McAfee presented the check for payment the next day. The check was not honored and was returned to McAfee with the notation "Non–Sufficient Funds." On March 14, Deep Nines's bank notified the company by e-mail that, due to the timing of debits and deposits, the check made payable to McAfee had been returned. Deep Nines then contacted McAfee by e-mail and stated that McAfee could resubmit the check for payment and "it will get taken care of."

According to Deep Nines, rather than resubmitting the check for payment, McAfee contacted Deep Nines on March 21 stating that unless Deep Nines agreed to modify the settlement agreement to impose stricter terms, McAfee intended to declare a breach of the agreement, accelerate all payments due, and seek liquidated damages. Deep Nines refused to make the modifications McAfee requested. Approximately two weeks later, McAfee brought this suit alleging claims based on breach of the settlement agreement, anticipatory repudiation, and the dishonored check. McAfee sought actual damages and liquidated damages as well as attorney's fees. Deep Nines made no further payments under the agreement.

McAfee moved for summary judgment on its claims and submitted evidence including copies of the settlement agreement, the notices of failure to timely pay, and the $45,000 check marked "Non–Sufficient Funds." Deep Nines responded to the motion contending the evidence was insufficient to show either a breach or repudiation of the agreement as a matter of law. Deep Nines contended that McAfee's refusal to re-present the check for payment after it was dishonored prevented Deep Nines from performing under the agreement. Deep Nines further argued that the late payment did not constitute a material breach because there was nothing in the agreement stating that time was of the essence. Finally, Deep Nines argued McAfee breached the settlement agreement's confidentiality provision by attaching the agreement to its petition thereby excusing any further performance by Deep Nines.

The trial court granted McAfee's summary judgment in part and denied it in part. The trial court granted McAfee summary judgment "on its claims for actual damages in the amount of $270,000." McAfee's motion for summary judgment on its claims for liquidated damages and attorney's fees was denied. McAfee filed a notice of non-suit the same day withdrawing its claims for liquidated damages and attorney's fees, thereby making the summary judgment final. Deep Nines filed a motion for new trial that was denied by the trial court. This appeal followed.

## II.

Deep Nines contends the trial court erred in granting summary judgment in favor of McAfee because there are genuine issues of material fact regarding which party materially breached the contract first. Deep Nines argues there is nothing in the contract that makes time of the essence with respect to the monthly payments. Accordingly, Deep Nines contends its late payment was not a material breach. Deep Nines further argues that McAfee's violation of the confidentiality provision, by publishing the settlement agreement as part of the pleadings in this case, was the first material breach of the agreement excusing all future performance under the contract by Deep Nines.

■ When construing written contracts, the court's duty is to ascertain the intentions of the parties as expressed in the written instrument. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). We discern intent from the agreement itself and the agreement must be enforced as written. *See Wells Fargo Bank, Minn., N.A. v. North Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex.App.-Dallas 2006, pet. denied). We must favor an interpretation that affords some consequence to each part of the agreement so that none of the provisions is rendered meaningless. *Id.* If the agreement can be given a certain and definite legal meaning, it is not ambiguous, and we construe the agreement as a matter of law. *See Coker*, 650 S.W.2d at 393.

■ For timely performance to be a material term of the contract, the contract must expressly make time of the essence or there must be something in the nature or purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence. *See Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex.

App.-Houston [14th Dist.] 2006, no pet.). Ordinarily, time is not of the essence and, unless the contract expressly makes timely performance a material term, the issue of whether time is of the essence is a fact question for the jury. *Id.*

■ Deep Nines argues that because the settlement agreement does not contain an express provision stating that "time is of the essence," the issue of whether timely performance is a material term of the agreement is a fact question for a jury. We disagree. Although the agreement does not use the phrase "time is of the essence," we do not construe contracts or decide cases based on the inclusion or omission of "magic words." *See Oryx Energy Co. v. Union Nat. Bank of Tex.*, 895 S.W.2d 409, 417 (Tex.App.-San Antonio 1995, writ denied). The agreement in this case states specific dates and times for performance as well as provides a cure period if payment is not received when due. While a stated date of performance does not by itself make time of the essence, the settlement agreement does more than set forth a date of performance. *See Kennedy*, 210 S.W.3d at 19. In addition to providing a specific cure period if payment is not made when due, the agreement states that if payment is not received within the cure period, Deep Nines will be considered in default. To construe the agreement in a manner that does not make timely payment a material term would render the cure period and default provisions meaningless. The language of the contract clearly makes time of the essence, and Deep Nines's failure to pay in a timely manner was a material breach. *See Beavers v. Goose Creek Consol. I.S.D.*, 884 S.W.2d 932, 935 (Tex.App.-Waco 1994, writ denied).

■ Deep Nines contends it did not breach the agreement or, in the alterna-

tive, whether it breached the agreement is a question of fact because the late payment was due to a mistake by a third-party rather than any fault of Deep Nines. Deep Nines argues the bank mistakenly dishonored the check because the check was processed before its account deposits were credited. Even if the check was dishonored in error such a mistake does not excuse Deep Nines's failure to perform under the agreement.

■■■■ By itself, an uncertified check is merely a conditional payment for an obligation owed to the payee. *See Probus Props. v. Kirby*, 200 S.W.3d 258, 262–63 (Tex.App.-Dallas 2006, pet. denied). Tendering an uncertified check discharges an obligation to pay on a timely basis only if the check is subsequently honored by the bank. *See id.* Where a party makes its payment by uncertified check, that party takes the risk that the check will not be honored and the payment obligation will not be fulfilled. *See id.* This is true regardless of whether the paying party endeavors to have funds in the account sufficient to cover the check at the time payment is due. *See id.*[1]

It was Deep Nines's obligation under the contract to ensure that McAfee received payment within the time provided by the agreement. Deep Nines makes no argument, and there is no evidence in the record to suggest, that McAfee delayed presenting the check for payment in any manner that prevented Deep Nines from performing in a timely manner. Indeed, the evidence clearly shows that Deep Nines waited until the last possible mo-

ment to attempt to make its payment. By tendering an uncertified check on the last day of the cure period, Deep Nines took the risk that the check would not be honored leaving no time to cure the default. Because time was of the essence under the contract, the failure to make a timely payment was a material breach for which Deep Nines is responsible.

■■■■ Deep Nines argues that McAfee waived any claim that time was of the essence when it accepted a check for the first payment that was not honored until after the cure period had passed. Deep Nines contends it is a question of fact whether this action induced it to believe that timely payment would not be insisted upon. As discussed above, however, an uncertified check is payment conditioned on the subsequent honor of the check. The fact that a check—otherwise timely delivered—is honored after the payment deadline has passed does not effect the timeliness of the payment to the payee. *See id.* Therefore, McAfee's acceptance of the first check within the time period for payment in no way shows that it did not intend to enforce the deadlines as stated in the agreement.

■■■■ Deep Nines also argues that its alleged breach was excused by "McAfee's refusal to accept Deep Nines's performance by re-presenting the check." Deep Nines appears to contend that, but for McAfee's failure to re-present the check to the bank for payment after it had been dishonored, Deep Nines would have performed under the contract as required.

---

1. Deep Nines argues that any reliance by McAfee on *Probus* is impermissible because *Probus* raises "new legal theories" that were not raised in the motion for summary judgment. The legal theory upon which McAfee moved for summary judgment was that Deep Nines breached a material term of the settlement agreement by failing to make a timely payment. At the hearing on the motion, McAfee cited to *Probus* in response to Deep Nines's attempt to place the blame for the breach on the bank. *Probus* does not raise a new ground for summary judgment but merely addresses Deep Nines's defense to the theory of liability already raised by McAfee.

This argument is flawed because once the bank dishonored the check upon its original presentment, Deep Nines was in material breach of the agreement. The cure period had expired and no later presentment of the check would have been sufficient to cure the breach. Once a party breaches a contract, giving rise to a cause of action, the rights of the non-breaching party are not affected by the breaching party's later offer to perform. *See Carrico v. Kondos,* 111 S.W.3d 582, 588 (Tex.App.-Fort Worth 2003, pet. denied).

Deep Nines suggests that McAfee's failure to re-present the check for payment also resulted in a failure to mitigate damages. The trial court's damage award to McAfee was only for the amount due under the settlement agreement, however. Therefore, McAfee's failure to re-present the check had no affect on the total amount of money Deep Nines was required to pay.

█ Finally, Deep Nines argues it was not required to perform under the agreement because McAfee materially breached the agreement by violating the confidentiality clause. Deep Nines alleges McAfee breached the confidentiality clause by attaching the settlement agreement to its pleadings in this case. This alleged breach did not occur until after Deep Nines had already breached the agreement by failing to make a timely payment. Because Deep Nines had already committed a material breach of the agreement, McAfee was excused from any further performance under the terms of the agreement. *See Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.* 134 S.W.3d 195, 196 (Tex.2004) (per curiam).

We conclude the trial court properly granted summary judgment in favor of McAfee on its claim for breach of contract. Because of our resolution of the foregoing arguments, it is unnecessary for us to address the remainder of the arguments presented by Deep Nines. We affirm the trial court's judgment.